IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NEIL MCDOUGALL, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> SAUDI ARABIAN OIL COMPANY, § <br> § <br> Defendant. § | Civil Action No. 3:24-CV-02564-N |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Saudi Arabian Oil Company's ("Saudi Aramco") motion to dismiss [23].  Because the Court lacks subject-matter jurisdiction over the case, the Court grants the motion.

### I. ORIGINS OF THE DISPUTE

Plaintiff Neil McDougall is suing Saudi Aramco for events arising out of his employment termination.  In 2012, Saudi Aramco's Houston-based subsidiary, Aramco Services Company ("ASC"), recruited McDougall to work at Saudi Aramco in Saudi Arabia.  Pl.'s First Am. Compl. ¶¶ 26–27 [16].  The Kingdom of Saudi Arabia is the direct, majority owner of Saudi Aramco, and Saudi Aramco's principal place of business is in Saudi Arabia.  *Id.* ¶ 2; *see also* Def.'s Mot. Br. 5 [24].  McDougall worked for Saudi Aramco under a series of one-year expat contracts from November 2012 until Saudi Aramco terminated him in June 2020.  Pl.'s First Am. Compl. ¶ 27.

In 2021, McDougall won a wrongful termination lawsuit against Saudi Aramco in Saudi Arabian court and received an award reflecting his lost salary.  *Id.* ¶ 31.  McDougall

MEMORANDUM OPINION AND ORDER – PAGE 1

also seeks to recover his lost medical, retirement, and life insurance benefits, but he needs certain employment documents to do so. *Id.* ¶¶ 33–35. During the wrongful termination proceedings, McDougall requested the employment documents from Saudi Aramco, and Saudi Aramco's attorney represented that the company would give him the employment documents. *Id.* ¶ 33. However, Saudi Aramco never gave him the documents. *Id.* ¶¶ 33, 37. So, in October 2024, McDougall filed this lawsuit against Saudi Aramco in the 116th Judicial District of Dallas County, Texas. *See* Pl.'s Orig. Pet. 1 [1-5]. Saudi Aramco then removed the case to this Court. *See* Notice of Removal 1 [1]. Saudi Aramco now moves to dismiss the case for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act. Def.'s Mot. Br. 5–14 [24].

## II. THE FOREIGN SOVEREIGN IMMUNITIES ACT

A suit is properly dismissed when a court lacks subject-matter jurisdiction over a case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Foreign Sovereign Immunities Act ("FSIA") "provides 'the sole basis for obtaining jurisdiction over a foreign state in [federal and state] courts.'" *Janvey v. Libyan Investment Auth.*, 840 F.3d 248, 257 (5th Cir. 2016)) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 & n.2 (1989)). FSIA defines "foreign state" to include a state "agency or instrumentality." 28 U.S.C. §1603(a). Under FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89 (1983) and 28 U.S.C. § 1604).

The party claiming immunity under FSIA has the initial burden of persuasion that it is a foreign state and therefore entitled to a presumption of immunity. *Janvey*, 840 F.3d at 257 (citing *United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir. 1992)). If it meets this burden, then the party opposing immunity has the burden of showing that one of the exceptions to immunity applies. *See id.* Then, if this burden is met, the party claiming immunity has the "ultimate burden of persuasion that the exception does not apply to [it] and that [it] is entitled to immunity." *Id.* at 257–58.

Because the basic objective of foreign sovereign immunity is "to free a foreign sovereign from suit, the court should normally resolve [] factual disputes and reach a decision about immunity as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (citing *Verlinden*, 461 U.S. at 493–494).

### III. THE COURT GRANTS THE MOTION TO DISMISS

Here, the parties agree that Saudi Aramco qualifies as a foreign state under FSIA.[1] The case thus hinges on whether an exception to FSIA applies. McDougall proffers two such exceptions — the commercial activity exception and the expropriation exception — each of which the Court addresses in turn.

---

[1] *See Al-Qarqani v. Saudi Arabian Oil Co.*, 19 F.4th 794, 800 (5th Cir. 2021) ("We hold that Saudi Aramco is a 'foreign state' for purposes of the FSIA." (citing 28 U.S.C. § 1603–1604)).

### *A. The Commercial Activity Exception Does Not Apply*

The commercial activity exception "withdraws sovereign immunity in any case 'in which the action is based upon a commercial activity carried on in the United States by [a] foreign state.'" *OBB Personverkehr AG v. Sachs*, 577 U.S. 27, 29 (2015) (quoting 28 U.S.C. § 1605(a)(2)). To determine what an action is "based upon," courts consider the "particular conduct that constitutes the gravamen of the suit." *See id.* at 35 (internal quotation marks omitted). Rather than individually analyzing each of the plaintiff's causes of action, courts "zero[] in on the core of the[] suit: the . . . sovereign acts that actually injured" the plaintiff. *See id.*

Under this analysis, the Court determines that the conduct constituting the gravamen of McDougall's suit occurred in Saudi Arabia. The core of McDougall's suit is based on Saudi Aramco's alleged refusal to provide him with the employment documents during the wrongful termination suit, which took place in Saudi Arabian court. *See* Pl.'s First Am. Compl. ¶¶ 33–37. McDougall maintains that his action is based upon Saudi Aramco's recruitment of him in the United States through its Houston-based subsidiary, ASC. *Id.* ¶¶ 13–14. The Court disagrees; McDougall's claims do not arise out of his hiring, but out of an alleged promise Saudi Aramco made during Saudi Arabian court proceedings regarding his termination. McDougall does not plead that Saudi Aramco — or ASC — acted fraudulently in recruiting him, but that Saudi Aramco acted fraudulently after his employment terminated. However McDougall frames his suit, Saudi Aramco's actions during the wrongful termination proceedings remain at its foundation.

Alternatively, McDougall argues that "Saudi Aramco's consistent, systematic actions" in the United States — namely, ASC's recruitment apparatus and Saudi Aramco's oil sales and refinement — "constitute a commercial action upon which [his] claims are based." Pl.'s Resp. ¶ 20 [27]. However, the commercial activity exception does not turn on Saudi Aramco's commercial activities as a general matter, but rather the "particular conduct that constitutes the gravamen of the suit." *OBB Personverkehr*, 577 U.S. at 35. And neither ASC's recruitment efforts nor Saudi Aramco's oil sales and refinement constitute Saudi Aramco's particular conduct constituting the gravamen of McDougall's suit. Accordingly, the commercial activity exception does not apply here.

### B. The Expropriation Exception Does Not Apply

Next, under the expropriation exception, a foreign state shall not be immune in any case "in which rights in property taken in violation of international law are in issue and that property . . . is owned or operated by agency or instrumentality of the foreign state . . . engaged in a commercial activity in the United States." *Bolivarian Republic*, 581 U.S. at 170 (quoting 28 U.S.C. § 1605(a)(3)). To survive a motion to dismiss based on this exception, "the relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (property rights) and that the relevant property was taken in a certain way (in violation of international law)." *Id.* at 174. Accordingly, "the legal standards by which takings are judged are not found in the domestic laws of the United States or even the laws of the 'expropriating' nation, but rather in customary international law." *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 821 (2d Cir. 2021) (collecting cases).

Under House Report 94–1487 on the FSIA legislation, there are three categories of illegal takings: (1) nationalizations or expropriations of property without payment of prompt, adequate, and effective compensation; (2) takings that are discriminatory; and (3) takings that are arbitrary. *See id.* (citing H.R. Rep. No. 94–1487, at 19–20 (1976)). Here, McDougall claims that Saudi Aramco's withholding of his employment documents is a taking of property rights in violation of international law because the taking is both discriminatory and arbitrary. Pl.'s First Am. Compl. ¶¶ 20–21.

The Court determines that McDougall has not sufficiently demonstrated that Saudi Aramco took the employment documents at issue in violation of international law. His allegations are conclusory and do not establish that the withholding of the employment documents was either discriminatory or arbitrary. First, McDougall's pleadings do not support that Saudi Aramco withheld the employment documents because he is an alien, so his discriminatory taking claim fails. Second, McDougall does not establish that Saudi Aramco's withholding of the employment documents bears no rational relationship to a public purpose, so his arbitrary taking claim also fails. Thus, McDougall has not met his burden of presenting evidence that the expropriation exception to immunity applies.

## Conclusion

Because no exception to FSIA applies to McDougall's claims, the Court grants the motion to dismiss. By separate order of this same date, the Court issues final judgment for Saudi Aramco.

Signed April 21, 2025.

_____
David C. Godbey
Chief United States District Judge